## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| BRYAN J. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:09-CV-346-TLS |
| | ) | |
| DR. ELIZABETH BOWMAN, | ) | |
| TERRY HARRELL, individually, and in her | ) | |
| official capacity as Executive Director of the | ) | |
| Judges and Lawyers Assistance Program, TIM | ) | |
| SUDROVECH, individually, and in his official | ) | |
| capacity as Clinical Director of the Judges and | ) | |
| Lawyers Assistance Program, DR. STEPHEN | ) | |
| ROSS, JOHN DOES and JANE ROES, | ) | |
| co-conspirators, and RANDALL SHEPARD, | ) | |
| in his official capacity as Chief Justice of the | ) | |
| Indiana Supreme Court, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

In this case, the Plaintiff seeks redress for alleged violations of various constitutional,

statutory, and common law rights by a number of individuals involved in the Indiana bar

admissions process. The Plaintiff is not suing the Indiana Supreme Court Board of Law

Examiners (BLE) or any of its directors. Instead, he is suing the executive director and the

clinical director of the Judges and Lawyers Assistance Committee (JLAC) and medical

professionals associated with the Indiana Judges and Lawyers Assistance Program (JLAP),

claiming that they conspired against him based upon his religious beliefs. Thus, the basic thrust

of the Plaintiff's lawsuit is that those involved with the JLAC and the JLAP were biased against

him because of his religious beliefs and that this bias resulted in a denial of his application for

admission to the Indiana bar by the BLE and the Indiana Supreme Court.

This matter is before the Court on a series of Motions to Dismiss filed by the Defendants. Before the Court can reach the merits of the Plaintiff's claims, the Court must first address some preliminary questions raised by the Defendants in their Motions to Dismiss, such as whether the Court has jurisdiction to review his claims or whether the Defendants are immune from suit. As the Court discusses in greater detail in this Opinion, the Court finds that it lacks jurisdiction to adjudicate the Plaintiff's claims and the Defendants are entitled to immunity. Consequently, the Court will grant the Defendants' Motions to Dismiss.

## PROCEDURAL BACKGROUND

On December 8, 2009, the Plaintiff filed a twenty-six count Complaint [ECF No. 1], claiming, among other things, violations of various constitutional and statutory rights, and alleging a conspiracy to discriminate against him that culminated in a denial of his application for admission to the Indiana bar by the BLE and the Indiana Supreme Court's approval of the BLE's decision. In his Complaint, he named the following Defendants: Dr. Elizabeth Bowman, a psychiatrist on JLAP's approved providers list; Terry Harrell, JLAP's Executive Director; Tim Sudrovech, JLAP's Clinical Director; Dr. Stephen Ross, a clinical psychologist who examined the Plaintiff; John Does and Jane Roes, co-conspirators; and the Honorable Randall Shepard, Chief Justice of the Indiana Supreme Court. Counts 1–13 and 25–26 are brought pursuant to 42 U.S.C. § 1983 alleging constitutional deprivations under the First and Fourteenth Amendments. These counts allege violations of different parts of the First Amendment: Counts 1–3 and 9–10 claim violations of the Free Speech Clause; Counts 4, 6, and 11 claim violations of the Free Exercise Clause; Counts 5 and 8 claim violations of the Establishment Clause; and Count 7

claims violation of the Assembly Clause. Likewise, the counts in the Complaint allege violations of different parts of the Fourteenth Amendment: Counts 12 and 25–26 claim violations of the Due Process Clause; and Count 13 claims violation of the Equal Protection Clause. The remaining counts (Counts 15–24) of the Complaint present claims under various state common law, statutes, and constitutional provisions. Counts 4–13, 16–19, and 21–23 are against Defendant Bowman; Counts 4–13 and 21–23 are against Defendant Harrell; Counts 4–13 and 20–23 are against Defendant Sudrovech; Counts 4–15 and 21–23 are against Defendant Ross; and Counts 1–10 and 24–26 are against Defendant Shepard. On December 16, 2009, the Plaintiff filed a Motion Seeking Temporary Equitable Relief [ECF No. 3]. On December 30, 2009, the Court issued an Order [ECF No. 22] denying the Plaintiff's Motion.

On January 29, 2010, Defendants Shepard, Harrell, and Sudrovech (the Indiana Supreme Court Defendants) filed a Motion to Dismiss [ECF No. 27] and a Memorandum in Support [ECF No. 28]. On February 1, Defendant Ross filed a Motion to Dismiss [ECF No. 29] and a Memorandum in Support [ECF No. 30]. On February 24, Defendant Bowman filed a Motion to Dismiss [ECF No. 42] and a Memorandum in Support [ECF No. 43]. On March 29, the Plaintiff filed a Response to Defendants' Motions to Dismiss [ECF No. 49]. On March 31, Defendant Bowman filed a Reply [ECF No. 50]. On April 8, Defendant Ross filed a Reply [ECF No.52] and the Indiana Supreme Court Defendants filed a Reply [ECF No. 53]. On April 26, the Plaintiff, with leave of Court, filed a Supplemental Brief [ECF No. 57], addressing the issue of absolute immunity. On May 5, Defendant Bowman filed a Reply Memorandum in Support of Motion to Dismiss Limited to Absolute Immunity [ECF No. 58]. On May 6, Defendant Ross filed a Supplemental Brief in Support of Motion to Dismiss [ECF No. 59]. On May 7, the Indiana

Supreme Court Defendants filed a Supplemental Reply Memorandum Regarding Absolute Immunity [ECF No. 60]. The Motions to Dismiss are fully briefed and ready for ruling.

## FACTUAL BACKGROUND

The Plaintiff applied for admission to the Indiana bar and alleges the following occurred after he submitted his application to the BLE.[1] After the BLE processed the Plaintiff's application, it ordered a hearing on his application, which occurred on January 25, 2008. After the hearing, the BLE ordered the Plaintiff to participate in the JLAP. The Plaintiff met with Defendant Ross, a psychologist, who performed three psychological examinations over the course of two meetings with the Plaintiff. On April 23, 2008, Defendant Ross issued a report finding that nothing should preclude the Plaintiff's application from going forward, but he did note the possibility of a sub-clinical bipolar disorder of a hypomanic type. Doctors that subsequently evaluated the Plaintiff, including Doctors Sass, Flueckiger, Alexy, and Bowman, ruled out the possibility of a sub-clinical bipolar disorder.

Six weeks after Defendant Ross issued his report, Defendant Sudrovech directed the Plaintiff to see a psychiatrist. The Plaintiff mailed letters on June 12 and 24, 2008, to Defendant Ross, and subsequently copied them to Defendant Sudrovech, requesting that Defendant Ross make changes to his report. The Plaintiff sent a copy of his June 24 letter to the BLE and expressed concern over the content (specifically the religious content) of Defendant Ross's psychological evaluations. Defendant Ross did not make any changes to his report. On July 30, the Plaintiff sent a letter to JLAP accepting Defendant Sudrovech's June 4 offer to provide a

---

[1] The Plaintiff's allegations are all contained in his Verified Complaint [ECF No. 1].

mentor through JLAP. The Plaintiff's June 30 letter also repeated his request for a meeting with the JLAC.

On September 8, 2008, the Plaintiff sent a letter to Defendants Sudrovech and Harrell, raising concerns about the JLAP process being used to evaluate his candidacy for admission to the Indiana bar. On September 9, the Plaintiff requested that he be permitted to submit an evaluation by a psychiatrist of his own choosing. Defendant Sudrovech denied this request because evaluations were to be provided by a psychiatrist from the JLAP providers list. It appears that on September 16 the Plaintiff met with Dr. Flueckiger for a psychiatric evaluation after the Plaintiff presented himself to the St. Joseph's Medical Group. After a one-hour evaluation, Dr. Flueckiger stated that he could recommend that the Plaintiff be permitted to sit for the Indiana bar examination. Defendants Harrell and Sudrovech continued to direct the Plaintiff to see a JLAP certified psychiatrist in order to avoid dismissal of his application. On October 13, Dr. Flueckiger evaluated the Plaintiff for another hour and deemed that he passed under Rule 12 of the Indiana Rules for Admission to the Bar and the Discipline of Attorneys (Admission and Discipline Rules). Dr. Flueckiger compiled a report on May 1, 2009, which reflects his analysis under Rule 12. The Plaintiff had requested that someone from the JLAP pre-brief Dr. Flueckiger before he re-evaluated the Plaintiff. Dr. Flueckiger was not pre-briefed.

In an effort to comply with JLAP requirements, the Plaintiff scheduled an evaluation with one of the two program-certified psychiatrists in Indianapolis, Defendant Bowman. The Plaintiff met with Defendant Bowman for testing over a period of time during his application process. Part of Defendant Bowman's evaluation involved the Plaintiff visiting Dr. William Alexy, who conducted a psychological examination during an interview. Dr. Alexy's final report concluded

that he could see the Plaintiff functioning adequately as a practicing attorney. On December 24, 2008, Defendant Bowman issued a report in which she did not reach a conclusion on the Plaintiff's fitness under Rule 12, but concluded that the Plaintiff suffered from a personality disorder, not otherwise specified. After receiving Defendant Bowman's report, Defendant Sudrovech prepared a report on behalf of the JLAP to assist the BLE in making its final determination on the Plaintiff's candidacy for admission to the Indiana bar. The BLE's final determination was that the Plaintiff's application should be denied and that he would not be admitted to the Indiana bar or be able to seek admission again until 2014. The Plaintiff sought review of this decision by the Indiana Supreme Court. The court issued an order stating that "[a]fter careful review of the submissions of the parties, it is the Court's determination that the BLE's decision should stand. Accordingly, Applicant's Petition for Review is DENIED." *In re Bar Applicant 24128*, No. 94S00-0910-BL-446, at 1 (Ind. Nov. 16, 2009).

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. To state a claim under the federal notice pleading standards, all that a complaint must do is set forth "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for relief sought." Fed. R. Civ. P. 8(a). Factual allegations need only give "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (other citation omitted). However, complaints

must provide more than labels and conclusions, formulaic recitations of the elements of causes of action, and facts that do not raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. Thus, a plaintiff's allegations must show that his entitlement to relief is plausible, rather than merely speculative. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). When ruling on Rule 12(b)(6) motions to dismiss, courts accept as true all well-pleaded allegations, view complaints in the light most favorable to the plaintiffs, and draw all reasonable inferences in their favor. *Id.* at 1081. The Seventh Circuit has provided the following summary of the lessons to be learned from the Supreme Court's opinions in *Twombly* and *Iqbal*:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

In ruling on Rule 12(b)(6) motions to dismiss, courts generally must confine their inquiry to the factual allegations set forth within the operative complaints. *Rosenblum v. Travelbyus.com*, 299 F.3d 657, 661 (7th Cir. 2002). When parties seeking dismissal under Rule 12(b)(6) submit documents with their motions to dismiss, courts can either ignore the documents or convert the motion to a motion for summary judgment. Fed. R. Civ. P. 12(d); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Venture Ass'n Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). In the Seventh Circuit, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings," and may be considered on a motion to dismiss, "if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Ass'n.*, 987 F.2d at 431. Documents that fall within this "narrow" exception must be "concededly

authentic." *Tierney*, 304 F.3d at 738.


## DISCUSSION

### A.      Matters Outside the Pleadings

The parties have filed certain exhibits and attachments along with some of their submissions. The Court needs to make an initial determination either to exclude these matters outside the pleadings or to give "[a]ll parties . . . a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). These materials include: a copy of the final order of the Indiana Supreme Court on the Plaintiff's application (ECF No. 30-1), which is attached to Defendant Ross's Memorandum in Support of Motion to Dismiss; the docket report in the Supreme Court of the United States reflecting the denial of the Plaintiff's petition for a writ of certiorari (ECF No. 50-1), which is attached to Defendant Bowman's Reply; a copy of the Plaintiff's petition for a writ of certiorari (ECF Nos. 52-1, 52-2, & 52-3), which is attached to Defendant Ross's Reply; and evidentiary materials, which are attached to the Plaintiff's Supplemental Brief [ECF No. 57-1].

"[T]here exists a narrow exception to the Rule 12(d) instructions that permits a district court to take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment." *Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th Cir. 2008). "This exception has allowed courts to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997). Under Rule Federal Rule of Evidence 201(b), "[a] judicially noticed fact must be one not

subject to reasonable dispute in that it is either (1) generally known within the territorial

jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to

sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also*

*Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995) (stating that

"[i]n order for a fact to be judicially noticed, indisputability is a prerequisite").

      The Court finds that the Indiana Supreme Court Order (ECF No. 30-1) falls within this

exception, and the Court will take judicial notice of the Order. The Order is not subject to

reasonable dispute—and has not been disputed by any of the parties—and is capable of

verification by sources whose accuracy cannot reasonable be questioned. For the same reasons,

the Court will also take judicial notice of the docket report in the United States Supreme Court

reflecting a denial of the Plaintiff's petition for a writ of certiorari. However, the Court will

exclude all of the other materials outside the pleadings that the parties submitted. The Plaintiff's

petition for a writ of certiorari, which Defendant Ross submitted, and all of the Plaintiff's

evidentiary submissions constitute matters outside the pleadings, and the Court could not

consider them without treating the pending motions under Rule 56.

**B.**    **Jurisdictional Defenses**

      As to Counts 4–13, all of the Defendants assert that this Court should abstain under the

*Rooker-Feldman* doctrine. As to Counts 1–3 and 25–26, the Indiana Supreme Court Defendants

argue that there is no justiciable case or controversy.[2] The Court will address these jurisdictional

---

    [2] Defendant Bowman also argues that this Court should abstain pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). The basis for Defendant Bowman's *Younger* abstention argument was that at the time she filed her brief, the Plaintiff was in the process of petitioning the Supreme Court for a writ of certiorari. After Defendant Bowman filed her brief, the Supreme Court denied the petition for certiorari. *Brown v. Ind. Bd. of Law Examiners*, 130 S.Ct. 2071

defenses in that order.

1.       **Rooker-Feldman** *Doctrine, Counts 4–13*

The Defendants argue that the *Rooker-Feldman* doctrine bars the Plaintiff's Counts 4–13 and that although the Plaintiff is not seeking a review of the Indiana Supreme Court's determination that he is not eligible for admission to the bar, his claims and allegations are so intertwined with that decision that this Court cannot rule on his claims. The Plaintiff responds that his suit is against the executive administrators of the JLAP and other Defendants allegedly involved in a conspiracy to violate his rights, and this Court's review of his case will not run afoul of the *Rooker-Feldman* doctrine.

To address this issue, the Court begins by considering aspects of the bar application process, the involvement of the BLE and the JLAP under Indiana law, and the review of the BLE admission application decisions by the Indiana Supreme Court. The Indiana Constitution confers original and exclusive jurisdiction on the Indiana Supreme Court in matters involving admission to the practice of law and discipline of attorneys in Indiana. Ind. Const. art. VII, § 4; *Matter of Fletcher*, 655 N.E.2d 58, 59 (Ind. 1995) (per curiam); *see also* Ind. Code § 33-24-1-2(b)(1) ("The supreme court has exclusive jurisdiction to: . . . admit attorneys to practice law in all courts of the state; . . . under rules and regulations as the supreme court may prescribe."); Ind. Admission and Discipline Rule 3, § 1 ("The Supreme Court shall have exclusive jurisdiction to admit attorneys to practice in Indiana."). Pursuant to this authority, the Indiana Supreme Court has adopted the Indiana Admission and Discipline Rules. It has also appointed a ten-member

_____

(2010) (mem.). Consequently, Defendant Bowman's *Younger* abstention argument is moot.

Board of Law Examiners, Admis. Disc. R. 9, and assigned it the responsibilities of "inquir[ing] into and determin[ing] the character, fitness, and general qualifications to be admitted to practice law as a member of the bar of the Supreme Court of Indiana," Admis. Disc. R. 12, § 1.

The court has also established a fifteen-member Judges and Lawyers Assistance Committee, which through the JLAP "provide[s] assistance to judges, lawyers and law students who suffer from physical or mental disabilities that result from disease, chemical dependency, mental health problems or age that impair their ability to practice" and "supports other programs designed to increase awareness about the problems of impairment among lawyers and judges." Admis. Disc. R. 31, § 2. The purpose of the JLAP is to assist impaired members in recovery, educate the bench and bar, and reduce the potential harm caused by impairment to the individual, the public, the profession, and the legal system. The Supreme Court, the Indiana Commission on Judicial Qualifications, the Disciplinary Commission, the BLE, and the administration of any Indiana law school may refer a judge, lawyer, or law student to the Judges and Lawyers Assistance Committee for assessment or treatment upon such terms as authorized under the JLAP Guidelines. Admis. Disc. R 31, § 8(c). JLAC is comprised of the committee members, an executive director, and other personnel approved by the Indiana Supreme Court who are necessary to carry out the committee's work. Admis. Disc. R. 31, § 1. The executive director is hired by the Chief Justice of the Indiana Supreme Court and has various powers and duties, including administering the committee's work, appointing staff, and supervising and directing the work of committee staff and volunteers.

Applicants for admission to the Indiana Bar by written examination must be 21 years of age and possess good moral character and fitness to practice law, Admis. Disc. R. 12, § 2, and

must establish that he or she (A) graduated from an ABA accredited law school; (B) satisfactorily completed the law courses required for graduation; and (C) completed at least two cumulative semester hours of legal ethics or professional responsibility. Admis. Disc. R. 13, § 4. After an applicant submits his or her application, the BLE makes one of five findings. Admis. Disc. R. 12, § 6. The first two possible findings are either (a) good moral character or (b) applicant failed to sustain his or her burden of showing good moral character. Admis. Disc. R. 12, § 6(a), (b). If the BLE has concerns about the applicant's moral character "based upon evidence of drug, alcohol, psychological or behavioral problems" it may make one of three possible findings: (c) conditional admission; (d) withhold the application up to two years to allow an applicant to prove rehabilitation; or (e) extend the application consideration time up to one year. Admis. Disc. R. 12, § 6(c), (d), (e). If the BLE finds that an applicant is not eligible for admission or is only eligible on a conditional basis, the Board or the applicant may request a hearing. Admis. Disc. R. 12, § 7. If necessary during the application process the BLE may refer an applicant to the JLAP. Admis. Disc. R., Program Guidelines for the Indiana Judges and Lawyers Assistance Program, § 1(n)(2). Rule 14, section 2 provides, in part:

> Any applicant aggrieved by the final action of the State Board of Law Examiners in refusing to recommend to the Supreme Court of Indiana the admission of the applicant to practice law in Indiana for any reason other than the failure to pass any examination as set forth in section (1) may . . . file a petition with the Supreme Court of Indiana requesting review by this Court of such final determination, and setting forth specifically therein the reasons, in fact or law, assigned as error in the Board's determination, . . . and the Court shall enter such order as in its judgment is proper, which shall thereupon become final.

After the Indiana Supreme Court issues a final order the only further review an applicant may seek is with the United States Supreme Court. 28 U.S.C. § 1257.

The *Rooker-Feldman* doctrine, articulated by the Supreme Court in *Rooker v. Fidelity*

12

*Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), is a jurisdictional rule directing that only the Supreme Court of the United States may review the judgment of a state court in civil litigation. *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 569 F.3d 667, 670 (7th Cir. 2009). The doctrine holds that federal district courts lack jurisdiction over lawsuits "'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commence and inviting district court review and rejection of those judgments.'" *Lance v. Dennis,* 546 U.S. 459, 464 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)); *see also Freedom Mortg. Corp.*, 569 F.3d at 671; *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008). Thus, the doctrine "'precludes lower federal court jurisdiction over claims seeking review of state court judgments . . . [because] no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment.'" *Taylor v. Fed. Nat'l Mortg. Ass'n,* 374 F.3d 529, 532 (7th Cir. 2004) (quoting *Brokaw v. Weaver,* 305 F.3d 660, 664 (7th Cir. 2002)).

The *Rooker-Feldman* doctrine also deprives lower federal courts of jurisdiction if the claims made in federal court are "inextricably intertwined" with the state court judgment. *Feldman,* 460 U.S. at 486; *Brokaw,* 305 F.3d at 664. Although "'inextricably intertwined' is a somewhat metaphysical concept," the key issue is whether the district court is being asked to review the state court decision, and this "determination hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Taylor*,

374 F.3d at 533; *see also Edwards v. Ill. Bd. of Admissions to Bar*, 261 F.3d 723, 729 (7th Cir.

2001) ("Constitutional claims that are 'inextricably intertwined' with state court judgments of

necessity call upon the district court to review the state court decision and are thus beyond the

district court's jurisdiction.") (citing *Young v. Murphy*, 90 F.3d 1225, 1231 (7th Cir. 1996)). In

other words, the *Rooker-Feldman* doctrine is inapplicable when the alleged injury is distinct

from the judgment. *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008). The Seventh Circuit has

provided the following explanation of what is meant by "inextricably intertwined" in the *Rooker-*

*Feldman* context:

> It is often difficult to distinguish between situations in which the plaintiff is
> seeking to set aside a state court judgment and ones in which the claim is
> independent. To assist in this determination, we ask whether the injury alleged by
> the federal plaintiff resulted from the state court judgment itself or is distinct from
> that judgment. If it is the former, then the federal courts lack subject matter
> jurisdiction, even if the state court judgment was erroneous or unconstitutional. If
> the injury alleged by the federal plaintiff is distinct from the state court judgment
> and not inextricably intertwined with it, the *Rooker-Feldman* doctrine does not
> apply. The key phrase in this previous sentence is, of course, "inextricably
> intertwined"—thus, if the injury alleged in the federal case is intertwined in this
> fashion, the *Rooker-Feldman* doctrine does apply. To determine whether the
> injury is inextricably intertwined, we focus on whether the federal court is being
> called upon to review the state court decision. Constitutional claims that are
> inextricably intertwined with state court judgments of necessity call upon the
> district court to review the state court decision and are thus beyond the district
> court's jurisdiction. On the other hand, an alleged injury will be independent if
> the state court was acting in a non-judicial capacity when it injured the
> plaintiff—for example, if the state court was promulgating rules regulating the
> bar.

*Edwards*, 261 F.3d at 728–29 (citations and quotations omitted).

In this case, a key initial question is whether the Plaintiff's claims are "inextricably

intertwined" with the Indiana Supreme Court's determination to deny his petition for review and

to allow the BLE's decision to deny his application for admission to stand. The Plaintiff argues

that his suit is not seeking to set aside the state court judgment, which would clearly be barred under *Rooker-Feldman*. *See Edwards*, 261 F.3d at 729. Rather, the Plaintiff contends that his constitutional claims challenge the way he was "processed through a state system" and that his suit is against a state agency. (Pl.'s Resp. to Defs.' Mot. to Dismiss 14, ECF No. 49.) *See Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 900 (7th Cir. 2010) (stating that "because the *Rooker-Feldman* doctrine is concerned only with state court determinations, it presents no jurisdictional obstacle to judicial review of executive action, including decisions made by state administrative agencies") (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002)). His argument requires that this Court assess whether the actions of the JLAC through the JLAP, during the bar admissions process, were so inextricably intertwined with the ultimate Indiana Supreme Court resolution of the Plaintiff's case such that this Court lacks jurisdiction to hear the Plaintiff's civil rights claims.

The Court finds that the *Rooker-Feldman* doctrine precludes this Court from adjudicating the Plaintiff's civil rights claims because the JLAC's actions through the JLAP are inextricably intertwined with the Indiana Supreme Court's adjudication of the Plaintiff's bar application and its judgment in the Plaintiff's case. To the extent that the Plaintiff is seeking to have this Court review the JLAC's actions pertaining to its role in assisting the Indiana Supreme Court's regulation of the admission to practice law, this Court does not have jurisdiction. Reviewing the JLAC's actions in this context would require the Court to consider the Indiana Supreme Court's process of referring cases to the JLAC, reviewing how the JLAC's information is utilized by the BLE, and finally reviewing the Indiana Supreme Court's ultimate resolution in the case of an individual seeking admission to the bar. The Plaintiff has attempted to plead his case so that it is

only against the JLAC and does not implicate the Indiana Supreme Court's adjudication *In the Matter of Applicant No. 24128.* However, a challenge to the JLAC in this context cannot be separated out so distinctly as to allow for this Court's review. The Admission and Discipline rules provide a process that culminates with the Indiana Supreme Court's review of an aggrieved bar applicant's application and any factual or legal errors with the BLE's determination. Admis. Disc. R. 14, § 2. Consistent with the rules, the Indiana Supreme Court's Order on the Plaintiff's petition for review states: "After careful review of the submissions of the parties, it is the Court's determinations that the BLE's decision should stand. Accordingly, Applicant's Petition for Review is DENIED." (ECF No. 30-1.) The Court finds that the Plaintiff's civil rights challenges to the JLAC's actions are so inextricably intertwined with the Indiana Supreme Court's final order in the Plaintiff's case that a review of the JLAC's actions would constitute a review of the state supreme court's final order, which is impermissible under the *Rooker-Feldman* doctrine.

The Plaintiff argues that the Supreme Court's clarification of the *Rooker-Feldman* doctrine in *Exxon Mobil Corp.*, 544 U.S. at 184, establishes that the doctrine should not apply to this case. The Court in *Exxon Mobil Corp.* stated:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Id.*; *see also Skinner v. Switzer*, 562 U.S. —, —, No. 09-9000, slip op. at 9 (Mar. 7, 2011)

(reaffirming the *Rooker-Feldman* doctrine's narrow application as explained in *Exxon*).[3] The

Plaintiff argues: (1) that he is not a state-court loser because he did not lose in a state court case

against these Defendants; (2) that he is not complaining of injuries caused by the Indiana

Supreme Court; and (3) that he is not asking this Court to review or reject the Indiana Supreme

Court's final order. The Plaintiff is correct that he is not asking the Court directly to review the

Indiana Supreme Court's order. However, the Court cannot allow artful pleading or argument to

obscure what the practical effect of any potential judgment would be—a review and modification

of the Indiana Supreme Court's final order. The Plaintiff also notes the Supreme Court's citation

to *GASH Associates v. Village of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993), for the

proposition that "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies

a legal conclusion that a state court has reached in a case to which he was a party . . . , then there

is jurisdiction and state law determines whether the defendant prevails under principles of

preclusion.'" *Exxon Mobil Corp.*, 544 U.S. at 293. The Supreme Court in *GASH Associates* was

drawing the line between a case that lies outside federal jurisdiction and a case within federal

jurisdiction in which a federal court may review a claim, but ultimately determines that a

plaintiff is precluded under the prevailing state court's res judicata principles. This Court's

conclusion is based on the inextricably intertwined rationale first established in *Feldman* and

further explained by the Seventh Circuit in *Edwards*, which was not altered in *Exxon Mobil

Corp.* Thus, the Plaintiff is incorrect that his claim is not inextricably intertwined with the

Indiana Supreme Court's judgment.

---

[3] The Court is aware that *Exxon* and *Skinner* provide guidance on the limited application of the *Rooker-Feldman* doctrine. However, given the similarities between this case and *Feldman*—the Plaintiff's challenge to the state bar admission process—some of the Plaintiff's claims fit into the narrow *Rooker-Feldman* doctrine, even as clarified by *Exxon* and *Skinner*.

The Plaintiff also relies on *Washington v. Wilmore*, 407 F.3d 274 (4th Cir. 2005), in

arguing that his claims are not inextricably intertwined with the Indiana Supreme Court's

judgment. His argument rests on the court's distinction between challenging a state court

conviction and challenging one aspect of the means by which that conviction was achieved. *Id.*

at 280. The plaintiff's challenge in *Washington* was whether one of the police officers who

testified against him at trial had fabricated evidence. *Id.* at 275. The Fourth Circuit concluded:

> there is simply no mechanism by which [the plaintiff] could have obtained from
> the state court a resolution of the question of [the defendant's] truthfulness
> regarding [the plaintiff's independent knowledge about a key fact at trial]. A
> criminal jury decides the question of a defendant's guilt or innocence; it does not
> make particularized findings regarding the credibility of individual witnesses
> generally or with respect to a specific item of testimony.

*Id.* at 280–81. The *Washington* case and this case are distinguishable because the plaintiff's

claim in *Washington* was collateral to the state court proceeding, but the Plaintiff's claim in this

case is a direct challenge to the state court proceeding. When the Indiana Supreme Court finally

adjudicates an individual's application for admission to the bar, it is exercising its original,

exclusive jurisdiction and ruling on all aspects of bar admission, including the process by which

an individual comes before the court. Ind. Const. art. VII, § 4; Admis. Disc. R. 14, § 2. In

seeking Indiana Supreme Court review of the BLE's decision to deny his application under

Admission and Discipline Rule 14, § 2, the Plaintiff was permitted to set forth the reasons, in

fact or law, assigned as error in the Board's determination, which would have included the

alleged conspiracy to deny his application. The *Washington* plaintiff could not get relief for the

constitutional deprivation of fabricated evidence because the alleged constitutional deprivation

was not an issue before the criminal jury or trial court. In this case, the Plaintiff sought relief

from the Indiana Supreme Court from all errors in fact or law in his bar application process and

18

was denied. The Plaintiff expresses frustration regarding the brevity with which the Indiana

Supreme Court handled his case, but the Indiana Supreme Court's brief resolution was still an

adjudication of his case.[4] The Plaintiff raises claims that are intertwined with, and were directly

resolved by, the Indiana Supreme Court.

      The Court's *Rooker-Feldman* analysis here does not apply to all of the Plaintiff's claims.

The Supreme Court has instructed that "a state-court decision is not reviewable by lower federal

courts, but a statute or rule governing the decision may be challenged in a federal action."

*Skinner*, slip op. at 10 (citing *Feldman*, 460 U. S. at 487, and *Exxon*, 544 U.S. at 286). The only

claims the Court finds barred by *Rooker-Feldman* are his constitutional law claims under § 1983,

which are inextricably intertwined with the Indiana Supreme Court's Order and upon which any

relief would require this Court to review and confirm or reject the Indiana Supreme Court's

judgment.[5] For these reasons, the Court finds that it lacks jurisdiction, pursuant to the *Rooker-*

*Feldman* doctrine, to adjudicate the Plaintiff's constitutional law claims challenging the review

of and the determination on his state bar application, and will dismiss Counts 4–13.

---

[4] The Plaintiff also highlights that the Indiana Supreme Court's order does not mention any of the named Defendants in this case. This argument pertains more to the potential preclusive effect of the Indiana Supreme Court's Order, which Defendant Ross raised in his defense. The Seventh Circuit has noted that "courts struggle with the distinction between a *Rooker-Feldman* problem and a res judicata problem." *Hale v. Comm. on Character and Fitness for State of Ill.*, 335 F.3d 678, 682 (7th Cir. 2003). Furthermore, while courts may permit preclusion doctrines to be raised and determined on a Rule 12(b)(6) motion when the grounds for preclusion appear on the face of the complaint or involve matters of which a court can take judicial notice, establishing such defenses often requires consideration of matters outside the complaint, and thus summary judgment is often a better tool. *See, e.g.*, *D & K Props. Crystal Lake v. Mut. Life Ins. Co. of N. Y.*, 112 F.3d 257, 259 & n. 1 (7th Cir. 1997). Given that the Court finds it lacks jurisdiction based on the *Rooker-Feldman* doctrine to adjudicate Counts 4–13, it will not reach the claim preclusion issue raised by the parties.

[5] These claims include Plaintiff's numbered Counts 4–13.

2.      *Case or Controversy, Counts 1–3 and 25–26*

The Indiana Supreme Court Defendants argue that there is no case or controversy

because the Plaintiff in Counts 1–3 and 25–26 is seeking a declaration of rights under the Indiana

Admission and Discipline Rules, which is not a legal claim. The Plaintiff responds that he has

standing to bring this case. In his Complaint, the Plaintiff premises his claims on two changes to

the Indiana Admission and Discipline Rules. On September 15, 2009, the Indiana Supreme Court

issued an Order that amended Rule 19 and Rule 23, effective on January 1, 2010. The Indiana

Supreme Court amended Rule 19, § 3 to allow disclosure of "other information relating to a bar

application, an applicant, and the result of the bar application for placement in a national data

bank operated by or on behalf of the National Conference of Bar Examiners." Prior to the rule

amendment only an applicant's name, date of birth, social security number, and date of

application were authorized to be disclosed to the national data bank. Rule 19, § 2 also includes a

provision that "[a]ll materials and information in the possession or knowledge of the Board of

Law Examiners, its Executive Director, or its agents or employees, shall be the property of the

Supreme Court of Indiana," which was not part of the 2009 amendments. The Plaintiff's

challenge is based in part on his concern that the Indiana Supreme Court reserves the "right to

punish [the] Plaintiff for publicizing or speaking of [the bar application process]." (ECF No. 1 at

30.) The Indiana Supreme Court amended Rule 23, § 20 to provide absolute immunity for all

oral or written statements made to the disciplinary commission or the JLAP in the course of

review proceedings under the rules.

The brief of the Indiana Supreme Court Defendants does not expressly present their

challenge as a ripeness challenge, but in arguing that the Plaintiff is "seeking a declaration of

rights regarding the Indiana Rules on Admission and Discipline" (ECF No. 28 at 6), it appears

that ripeness is one of their principal concerns. The Plaintiff is not claiming that there are any

proceedings against him for violating the Indiana Admission and Discipline Rules. Instead, he is

seeking a declaration that Rules 19 and 23 are unconstitutional. The Plaintiff addresses ripeness

in his Reply and relies on *Steffel v. Thompson*, 415 U.S. 452 (1974), to argue that his case is ripe

because he is trapped between having to violate the Indiana Admission and Discipline Rules and

risk administrative proceedings in Indiana and Kansas[6] or forego "what he believes to be

constitutionally protected activity." *Id.* at 462.

> Article III, section 2 of the United States Constitution states in part:
>
> [t]he judicial Power shall extend to all Cases, in Law and Equity, arising under
> this Constitution, the Laws of the United States, and Treaties made, or which shall
> be made, under their Authority . . . to Controversies to which the United States
> shall be a Party;–to Controversies between two or more States;–between a State
> and Citizens of another State;–between Citizens of different States;–between
> Citizens of the same State claiming Lands under Grants of different States, and
> between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

Article III limits federal courts to adjudicating actual cases or controversies, and there are three

requirements for Article III case-or-controversy standing: (1) an injury in fact; (2) that is fairly

traceable to the defendant's action; and (3) that is capable of being redressed by a favorable

decision from the court. *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 516 (7th Cir.

2010). The alleged injury must be both (a) concrete and particularized and (b) actual or

imminent, not conjectural or hypothetical. *Id.* In order for a case to be justiciable in federal court,

"there must be an actual controversy over an issue, not a desire for an abstract declaration of the

law." *In re Summers*, 325 U.S. 561, 567 (1945) (citing *Muskrat v. United States*, 219 U.S. 346,

---

[6] The Plaintiff is admitted to the bar of the State of Kansas.

361 (1911); *Fairchild v. Hughes*, 258 U.S. 126, 129 (1922)). If a dispute between parties is not a case or controversy, then a federal court lacks power under Article III to resolve the dispute. *Bond v. Ulteras*, 585 F.3d 1061, 1070 (7th Cir. 2009) (quoting *DiamlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).

"Cases are unripe when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992). The ripeness doctrine stems from Article III limitations as well as prudential concerns. *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 58 n.18 (1993). The Article III limitation is that a federal court may only consider a case that has "such a form that the judicial power is capable of acting on it." *In re Summers*, 325 U.S. at 567 (quoting *Osborn v. Bank*, 22 U.S. 738, 819 (1824)). Further, the "ripeness doctrine deals with the time, if any, at which a party may seek pre-enforcement review of a statute or regulation." *Triple G. Landfills, Inc. v. Bd. of Comm'rs of Fountain County*, 977 F.2d 287, 288–89 (7th Cir. 1992). The prudential concern underlying ripeness "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).

"The Supreme Court has announced two factors that determine whether an issue is ripe for judicial consideration. First, the issue on which review is sought must be fit for judicial decision. Second, courts must take into account any hardship to the parties of withholding court consideration." *Lehn v. Holmes*, 364 F.3d 862, 867 (7th Cir. 2004) (internal quotations and citations omitted). An issue is not fit for judicial decision when it pertains to "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Evers v. Astrue*, 536

22

F.3d 651, 662 (7th Cir. 2008) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). For the

second factor, a plaintiff may demonstrate hardship by establishing that "(1) enforcement is

certain, only delayed; or (2) even though enforcement is not certain, the mere threat of future

enforcement has a present concrete effect on [the Plaintiff's speech] and 'irremediably adverse

consequences' would flow from a later challenge." *Metro. Milwaukee Ass'n of Commerce v.*

*Milwaukee Cnty.*, 325 F.3d 879, 882 (7th Cir. 2003) (citations omitted).

There is a ripeness problem with the Plaintiff's challenges to Rules 19 and 23 as

contained in his Counts 1–3 and 25–26 because any potential consequence the Plaintiff may face

from violating the challenged rules is too remote. The procedures governing the discipline of

attorneys for violating the Admission and Discipline Rules are set forth in Rule 23. Rule 23 only

applies to attorneys admitted to practice law in Indiana. Admis. Disc. R. 23, § 1. The Plaintiff is

not admitted to practice law in Indiana, and it is not clear what enforcement action could result

based on the Plaintiff publishing an account of his Indiana bar application process. The Court is

not determining that the Plaintiff would not face consequences from violating the challenged

rules, only that any potential consequence appears to be too remote to be discernable at this time.

Therefore, the Plaintiff's challenges to Rules 19 and 23 are not ripe, and the Court will grant the

Indiana Defendant's Motion as to Counts 1–3 and 25–26.


C.      **Immunity Defenses**

In addition to the *Rooker-Feldman* doctrine, the parties have discussed various immunity

defenses, and the Court will address these as additional grounds for dismissal. The Indiana

Supreme Court Defendants claim Eleventh Amendment immunity, and Defendants Bowman and

Ross raise witness immunity.[7]

1.      *Eleventh Amendment Immunity and the Indiana Supreme Court Defendants*

The Indiana Supreme Court Defendants argue that the Eleventh Amendment bars suits in federal court against state officials sued in their official capacity and that some of the Plaintiff's claims are against them in their official capacities.[8] The Plaintiff responds that he is not seeking any monetary damages and did not name state agencies as Defendants and therefore that the Eleventh Amendment does not bar his claims.

---

[7] Other immunities the Defendants raise include judicial immunity or a derivative of judicial immunity, and immunities conferred by the Admission and Discipline Rules. Because the Court finds that the Indiana Supreme Court Defendants are immune under the Eleventh Amendment and that Defendants Bowman and Ross are immune as witnesses, it will not reach these additional immunity claims, except for Defendant Shepard's judicial immunity because the Plaintiff conceded this issue.

Defendant Shepard argues that he is entitled to absolute judicial immunity from all of the Plaintiff's claims under both Indiana and federal law. The Plaintiff concedes this point in his Supplemental Briefing. (ECF No. 57 at 4 (stating that "[t]he Chief Judge of the Indiana Supreme Court enjoys absolute immunity from suit given the claims presented in Plaintiff's Complaint").) Judges are immune from suits brought on the basis of their judicial acts. *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978). "[T]he immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (citations omitted). Allegations of conspiracies with non-immune individuals do not pierce a judge's absolute immunity. *Pena v. Mattox*, 84 F.3d 894, 897 (7th Cir. 1996). The Complaint alleges that Defendant Shepard is liable based upon his judicial acts, and the Plaintiff has conceded that Defendant Shepard is entitled to absolute immunity from suit. Consequently, the Court finds that in addition to Eleventh Amended immunity, Defendant Shepard is protected by judicial immunity.

Defendants Harrell and Sudrovech argue that they are entitled to quasi-judicial immunity because their actions were undertaken pursuant to directives of a judicial officer. The Court does not need to determine this immunity issue in light of its finding that Defendants Harrell and Sudrovech are immune under the Eleventh Amendment.

All of the Defendants other than Defendant Shepard argue that Admission and Discipline Rule 31, § 10 provides immunity. At this stage of the proceeding and considering the Court's determination later in this Opinion not to exercise supplemental jurisdiction over the Plaintiff's state-law claims, the Court will not reach this immunity issue. The Indiana Supreme Court Defendants also raise immunity under the Indiana Tort Claims Act, but for the same reasons, the Court will not reach that issue.

[8] In addition to the Indiana Supreme Court Defendants, Defendant Bowman asserts that, to the extent that this Court would find that she acted as a state official, she too would be immune from suit when sued in her official capacity. At this stage in the litigation, the Court does not need to rule on whether Defendant Bowman was acting as a state official because she is immune from suit as a witness and the Court has already held it will not reach the claims on which this issue may be dispositive.

Eleventh Amendment immunity precludes a citizen from suing a state or a state agency, including state officials in their official capacities, in federal court without the state's consent or congressional abrogation. *See Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletic Dep't*, 510 F.3d 681, 695 (7th Cir. 2007); *Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005) ("[S]tate officials in their official capacities are . . . immune from suit under the Eleventh Amendment."). "A suit against a state may be brought in federal court only when (1) a state official is sued for prospective equitable relief under *Ex Parte Young*, 209 U.S. 123, 159–60 (1908); (2) Congress abrogates the State's immunity pursuant to its powers under section 5 of the Fourteenth Amendment; or (3) the State consents and waives its immunity." *Nelson v. Miller*, 570 F.3d 868, 883 (7th Cir. 2009). Indiana has not elected to waive its Eleventh Amendment immunity, *Meadows v. State of Ind.*, 854 F.2d 1068, 1069 (7th Cir.1988), and § 1983 does not disturb this immunity, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63 (1989).

The Court finds that the Indiana Supreme Court Defendants are entitled to Eleventh Amendment immunity.[9] The Plaintiff argues that when a complaint fails to specify whether the suit is against the state officer in his official or personal capacity, the Court should infer the character of the action from the course of the proceedings. However, the Seventh Circuit has a different rule in § 1983 cases. *Stevens v. Umsted*, 921 F. Supp. 530 (C.D. Ill. 1996), aff'd, 131 F.3d 697 (7th Cir. 1997)); *see also Lewis v. Downey*, 581 F.3d 467, 472–73 (7th Cir. 2009)

---

[9] The Indiana Supreme Court Defendants also argue that they are not "persons" subject to suit under 42 U.S.C. § 1983. Officials sued in their official capacities are not "persons" under § 1983 because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . . As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 63, 71 (citations omitted). Consequently, the Indiana Supreme Court Defendants in their official capacities are not suable "persons" under § 1983.

(discussing § 1983 liability in suits against defendants in their individual capacities); *Guzman v. Sheahan*, 495 F.3d 852, 860 (7th Cir. 2007) ("[A] complaint that does not make clear that it is brought in an individual capacity will be construed as having been brought only in an official capacity.") (citing *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990) ("In the absence of any express statement that the parties are being sued in their individual capacities, an allegation that the defendants were acting under color of law generally is construed as a suit against the defendants in their official capacities only.")). The Plaintiff's Complaint alleges claims against the Indiana Supreme Court Defendants in their official capacities and asserts that they were acting under color of law. Even if there is some ambiguity as to whether the Plaintiff is suing the Indiana Supreme Court Defendants in their official capacities, the Seventh Circuit case law directs the Court to construe the Plaintiff's claims as against the Indiana Supreme Court Defendants in their official capacities.

Because Congress did not abrogate Eleventh Amendment immunity in enacting § 1983 and because Indiana has not waived its immunity, the Plaintiff's Counts 4–13 and 21–24 could only go forward against state officials for prospective relief under *Ex Parte Young*. It appears the Plaintiff is also seeking prospective relief,[10] and to the extent the Plaintiff is seeking prospective relief the Indiana Supreme Court Defendants are not immune from suit under the Eleventh Amendment. *See Ind. Protection & Advocacy Servs. Grp. v. Ind. Family & Soc. Servs. Admin.*, 603 F.3d 365, 370–74 (7th Cir. 2010) (discussing Eleventh Amendment immunity and *Ex Parte Young*, noting "under *Ex Parte Young*, a plaintiff may file suit against state officials seeking prospective equitable relief for ongoing violations of federal law") (citing *Marie O. v. Edgar*,

---

[10] In his prayer for relief in Counts 4–13 the Plaintiff "prays for an order in equity that all Defendants receive advance training in the First Amendment and the limitations on state action." (ECF No. 1 at 32–35.)

131 F.3d 610, 615 (7th Cir. 1997)). The lack of immunity from prospective relief does not revive

any of the Plaintiff's claims the Court will dismiss pursuant to the *Rooker-Feldman* doctrine.


**2.      *Witness Immunity and Defendants Bowman and Ross***

Defendants Bowman and Ross argue that they are entitled to absolute judicial immunity

because they served as witnesses in a quasi-judicial proceeding. The Plaintiff argues that

Defendants Bowman and Ross are not entitled to immunity because they did not provide sworn

testimony and because they were not acting under direction from judicial or quasi-judicial

officers. Defendant Bowman's and Ross's Reply Memoranda argue that they did not have to be

under oath to receive absolute immunity under Indiana law.

Court-appointed expert witnesses are entitled to absolute immunity from liability for

damages when they act at a court's direction. *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir.

2009). From the allegations in the Complaint, it appears that the Indiana Supreme Court, through

the BLE and the JLAC, asked Defendants Bowman and Ross to evaluate and provide reports

regarding the Plaintiff's character and fitness for purposes of admission to the Indiana bar.

Defendants Bowman and Ross then met with the Plaintiff at the JLAC's direction and reported to

the JLAC as part of the bar admission process.[11] Thus, the involvement of Defendants Bowman

and Ross in this case was as expert witnesses acting at the Indiana Supreme Court's direction. As

to the Plaintiff's argument that Defendants Bowman and Ross never gave sworn testimony and

were therefore never witnesses, the Court notes that the Seventh Circuit's analysis in *Cooney*

---

[11] In his Supplemental Briefing, the Plaintiff asserts that Dr. Ross initially indicated that he completed the psychological evaluation independent of the state. (ECF No. 57 at 22 n.6.) The Plaintiff has taken Defendant Ross's statement out of context. Dr. Ross's statement was included in an alternative argument and provides no basis for setting aside his immunity.

does not require that an expert witness provide a sworn statement in order to be entitled to

immunity. *Id.* at 969–70 (discussing the expert's preparation of a report and noting that the

appointed expert in the case could not be called as a witness under Illinois law).[12] The Court

finds that Defendants Bowman and Ross are entitled to absolute immunity from the Plaintiff's

claims against their actions taken at the Indiana Supreme Court's direction.


**D.      John Does and Jane Roes**

In addition to the named Defendants, the Plaintiff lists as parties "[t]he unnamed

Defendants John Doe and Jane Roe [as] co-conspirators with the named Defendants whose

actions, identities[,] and relationship with governmental entities are not fully known at this

time." (ECF No. 1 at 3.) However, the Plaintiff may not pursue claims against Doe Defendants

until he has identified them because "[i]t is pointless to include lists of anonymous defendants in

federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ.

P. 15, nor can it otherwise help the plaintiff." *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir.

1997). Thus, the Court will also dismiss the Plaintiff's claims as to Defendants John Does and

Jane Roes.


**E.      Remaining Claims and Defenses, Counts 14–24**

In addition to the federal claims, the Plaintiff has asserted claims under state law. The

_____

[12] In their submissions, the parties discussed *Kim v. Parker*, 373 Fed. Appx. 606, 607–08 (7th Cir. 2010), in which the Seventh Circuit upheld the immunity of a court-appointed psychiatrist without any indication that the psychiatrist provided sworn testimony and cited Seventh Circuit precedent including *Cooney*, which this Court is relying on here. The Seventh Circuit's order in *Kim v. Parker* is an unsigned "not for publication" order under Federal Rule of Appellate Procedure 32.1, and under Circuit Rule of the United States Court of Appeals for the Seventh Circuit 32.1, the court's order in that case is not treated as precedent.

basis for the Court's subject-matter jurisdiction to review these claims is supplemental

jurisdiction under 28 U.S.C. § 1367(a) (extending federal district court jurisdiction to all claims

that are so related to a claim within the court's original jurisdiction that they form part of the

same case or controversy within the meaning of Article III of the Constitution). Section 1367(a)

authorizes federal courts to exercise supplemental jurisdiction over state-law claims, but district

courts have discretion to decline to exercise jurisdiction over supplemental state-law claims for

several reasons that are enumerated in § 1367(c). Subsection (c)(3) states that a court may

decline to exercise supplemental jurisdiction when the court "has dismissed all claims over

which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[T]he general rule is that, when all

federal claims are dismissed before trial, the district court should relinquish jurisdiction over

pendent state-law claims rather than resolving them on the merits." *Wright v. Assoc. Ins. Cos.*, 29

F.3d 1244, 1251 (7th Cir. 1994). The Seventh Circuit has identified three situations where a

court should retain jurisdiction over supplemental claims even though the federal claims have

dropped out: (1) where the statute of limitations would bar the refiling of the supplemental

claims in state court; (2) where substantial federal judicial resources have already been expended

on the resolution of the supplemental claims; and (3) where it is obvious how the claims should

be decided. *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 906–07 (7th Cir. 2007) (citing

*Wright*, 29 F.3d at 1251–52).

   The Court is dismissing all claims over which it has original jurisdiction, and this case is

at the pleading stage. Additionally, there does not appear to be any bar to the Plaintiff's ability to

bring his state-law claims in state court. Consequently, the Court will exercise its discretion and

decline to exercise supplemental jurisdiction over the Plaintiff's state-law claims. Thus, the

Court will dismiss all of the Plaintiff's remaining Counts 14–24.


**F.      Possible Amendment to Pleading**

Because the Court will dismiss the Plaintiff's claims, the Court considers here whether to

give the Plaintiff leave to file a motion to amend his Complaint. The Seventh Circuit has

instructed:

> One objective of Rule 8 is to decide cases fairly on their merits, not to debate
> finer points of pleading where opponents have fair notice of the claim or defense.
> *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").
> Generally, if a district court dismisses for failure to state a claim, the court should
> give the party one opportunity to try to cure the problem, even if the court is
> skeptical about the prospects for success.

*Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (citing *Foster v. DeLuca*, 545 F.3d

582, 584 (7th Cir. 2008)). Rule 15 "dictates that leave to amend a pleading shall be freely given

'when justice so requires.'" *Foster*, 545 F.3d at 583–584.[13] In this case, the Court is dismissing

all of the Plaintiff's claims on jurisdictional grounds, not for failure to state a claim. However, in

light of the prevailing standards under Rules 8 and 15, the Court will allow the Plaintiff to file a

motion for leave to file an amended complaint if he chooses to do so. *See Barry Aviation, Inc. v.*

*Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) ("The better practice is

to allow at least one amendment regardless of how unpromising the initial pleading appears

---

[13] The *Foster* court adds: "For purposes of Rule 15(a), a motion to dismiss does not constitute a responsive pleading; thus, 'an order dismissing the original complaint normally does not eliminate the plaintiff's right to amend once as a matter of right.'" *Foster*, 545 F.3d at 584 (quoting *Crestview Vill. Apartments v. United States HUD*, 383 F.3d 552, 557 (7th Cir. 2004); *Willhelm v. E. Airlines, Inc.*, 927 F.2d 971, 972 (7th Cir. 1991)). On December 1, 2009, an amendment to Rule 15 went into effect that altered the language of Rule 15(a) to read in part as follows: "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading *or 21 days after service of a motion under Rule 12(b), (e), or (f)*, whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B) (emphasis added). The Plaintiff filed his Complaint on December 8, 2009, and did not amend his Complaint within 21 days of service after the Defendants filed their Motions to Dismiss. The Plaintiff no longer has a right to amend once as a matter of right.

because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim.") (quotation marks and citation omitted). Under the Federal Rules of Civil Procedure, "a district court may deny a motion to amend 'if the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss.'" *Foster*, 545 F.3d at 584 (quoting *Crestview Vill. Apartments v. United States HUD*, 383 F.3d 552, 558 (7th Cir. 2004)). The Defendants will have an opportunity to respond to any motion filed by the Plaintiff seeking leave to amend his pleading.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants Shepard, Harrell, and Sudrovech's Motion to Dismiss [ECF No. 27], Defendant Ross's Motion to Dismiss [ECF No. 29], and Defendant Bowman's Motion to Dismiss [ECF No. 42]. The Court DISMISSES the Plaintiff's Complaint [ECF No. 1] WITHOUT PREJUDICE to his ability to seek to amend his Complaint and make the necessary and appropriate allegations if he, consistent with Federal Rule of Civil Procedure 11, believes the facts support them. If the Plaintiff wishes to seek leave to file an amended complaint, he must file the appropriate motion along with his proposed amended complaint on or before April 14, 2011. If no such motion is filed by that date, the Court will dismiss this case.

SO ORDERED on March 31, 2011.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

31